FILED ___ ENTERED
___ LOGGED ___ RECEIVED

FEB 27 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE: )  UNDER SEAL
) CASE NO. 20-628-DLB
Search of 338 N. Charles Street, )
Second Floor, Baltimore, Maryland 21202; )
and )
)
Search of 2020 silver Cadillac SUV bearing ) CASE NO. 20-629-DLB
Virginia License Plate Number UPG7714 )

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH AND SEIZURE WARRANT

Your Affiant, Paul Geare, being first duly sworn, hereby depose and state as follows:

1. Your Affiant also makes this Affidavit in support of search and seizure warrants for 338 N. Charles Street, Second Floor, Baltimore, Maryland 21202, as fully described in Attachment A-1 (the "**Target Location**"), for the items specified in Attachment B-1, and a 2020 silver Cadillac SUV, bearing Virginia tag UPG7714, as fully described in Attachment A-2 (the "**Target Vehicle**"), for the items specified in Attachment B-2.

2. Your Affiant submits that probable cause exists to believe that the Querida Moran a/k/a Querida Lewis (the "**Target Subject**") is engaging in drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1) and 846; the **Target Subject** is using the **Target Vehicle** in furtherance of drug trafficking activities; and the **Target Location** contains fruits, evidence, and instrumentalities of drug trafficking activities.

### Affiant's Background

3. Your Affiant is an "investigative or law enforcement officer . . . of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. Since January 2019, your Affiant has been a Task Force Officer with Homeland Security Investigations ("HSI") and is assigned to the Transnational Organized Crime Narcotics Group. Your Affiant is also a sworn officer of the Baltimore Police Department ("BPD"), rising to the level of Detective over fifteen (15) years ago.

5. As an HSI Task Force Officer, your Affiant has participated in numerous investigations regarding drug trafficking, gangs, and firearms. During those investigations, your Affiant has conducted covert surveillance of suspected drug traffickers and interviewed individuals involved in gangs and drug trafficking. Your Affiant also participated in the execution of search and arrest warrants involving drug traffickers and violent offenders and seized evidence related to drug trafficking and firearm violations, including narcotics, firearms, and other contraband.

6. As a BPD Detective, your Affiant has investigated narcotics trafficking, violent crimes, and firearm violations. During those investigations, your Affiant participated in the execution of search warrants that led to the seizure of firearms, narcotics, drug paraphernalia, and documents relating to the distribution of narcotics. Your Affiant also has arrested those who violated state gun and drug laws.

7. Based on your Affiant's training, knowledge, and experience, he has become familiar with the following: (1) the manner in which drug traffickers (a) transport, store, and distribute drugs, (b) collect, keep, and conceal the proceeds of their illegal activities; and (2) the ways in which drug traffickers (a) use cellular telephones, cellular telephone technology, coded communications or slang during drug-related conversations, and (b) other means to facilitate their illegal activities and thwart law enforcement investigations.

8. Specifically, based on your Affiant's training, knowledge, and experience, your

Affiant has learned the following:

    a. Controlled dangerous substances ("CDS") trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, CDS trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity.

    b. CDS traffickers commonly compartmentalize members of their organization into discrete "cells," with specific members, responsibilities, and/or geographical territories assigned to each cell, and members of one cell commonly receive information only about that specific cell's criminal activities. Consequently, this limitation of information frustrates law enforcement efforts to dismantle the entire organization.

    c. Cellular telephones are indispensable tools of the CDS trafficking trade. CDS traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic mail, and other, similar electronic means and/or devices to maintain contact with co-conspirators and other CDS traffickers.

    d. CDS traffickers often maintain a supply of illegal drugs, items used in the manufacturing, packaging, transportation of illegal drugs, and drug proceeds inside of their residences, their vehicles, and stash locations.

    e. CDS traffickers conceal contraband related to illicit activities—such as scales, packaging material, cutting agents, vacuum sealers, and other containers—in locations where they can readily access them, such as their residences, their vehicles, the residences of their friends, family members, and associates, or their drug distribution locations, such as a stash house.

    f. CDS traffickers maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of CDS for long periods of time in their residence, their vehicles, the residences of their friends, family members, and associates, or their drug distribution locations. This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, passports, accounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking. Indicia of occupancy, residency and/or ownership of the premises to be searched are often present in such premises.

3

g. Conceal in their vehicles; their residences; the residences of their friends, family members and associates; their drug distribution locations; or other places over which they maintain dominion and control large quantities of United States currency, financial instruments, precious metals, jewelry, and other items of value.

i. CDS traffickers take, or cause to be taken, photos of themselves, their associates, their property, and illegal contraband. CDS traffickers usually maintain these photos in their residence; their vehicles, the residences of their friends; family members or associates; or their drug distribution locations, such as a stash house.

### Basis of Information

9. The facts set forth in this Affidavit are based upon your Affiant's (1) personal knowledge, (2) review of documents and other evidence related to this investigation, and (3) communication with others who have personal knowledge of the events and circumstances described herein (4), as well as information that your Affiant gained through training and experience. Because your Affiant submits this Affidavit for the limited purpose of establishing probable cause for the requested search warrants, he has not included every detail of this investigation. Rather, your Affiant has included in this Affidavit only those facts that are sufficient to support a probable cause finding for the issuance of the requested search warrants.

### Probable Cause

10. In July 2018, HSI began investigating a heroin, fentanyl, and cocaine drug trafficking organization that was operating in the Baltimore metropolitan area (hereinafter, the "DTO"). During the investigation, HSI identified the **Target Subject** as a DTO member.

11. On January 29, 2020, a federal grand jury in the District of Maryland indicted the **Target Subject** with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. On the same day, United States Magistrate Judge Thomas M.

DiGirolamo issued an arrest warrant for the **Target Subject**.

12. During the investigators' surveillance of the **Target Subject** during the course of this investigation, they identified the **Target Location** as the **Target Subject**'s residence.

13. As recent as February 25, 2020, at approximately 10:55 a.m., investigators observed the **Target Subject** enter the main entrance of the building in which the **Target Location** is located.

14. On February 26, 2020, the **Target Location**'s landlord confirmed that the **Target Subject** rented and lived in the **Target Location**.

15. Investigators recently confirmed that, on January 22, 2020, the **Target Subject** rented the **Target Vehicle** from Hertz Rental Car's BWI airport location. As recent as February 26, 2020, at approximately 9:20 a.m., investigators observed the **Target Subject** driving and parking the **Target Vehicle**.

16. On February 26, 2020, investigators requested the Baltimore Police Department canine support for a fresh air scan of the **Target Vehicle** to determine whether there was probable cause that the **Target Vehicle** contained narcotics. The Baltimore Police Department canine, Bella,[1] scanned the exterior of the **Target Vehicle**. At approximately 9:52 a.m., Bella positively alerted to the presence of narcotics in the **Target Vehicle**.

## Conclusion

17. Based on the foregoing, your Affiant submits there is probable cause to believe that the **Target Subject** is engaging in drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1)

---

[1] "Bella" was last certified on June 13, 2019, to alert on odors of heroin, cocaine, and marijuana and is trained twice a month to ensure her accuracy. Baltimore City Detective Donald Hayes is Bella's handler.

and 846; the **Target Subject** is using the **Target Vehicle** in furtherance of drug trafficking activities; and the **Target Location** contains fruits, evidence, and instrumentalities of drug trafficking activities.

18. Accordingly, your Affiant respectfully requests search warrants for the following:

   a. the **Target Location**, as fully described in Attachment A-1, for the items listed in Attachment B-1, which constitute evidence, fruits, and instrumentalities of drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1) and 846, and the seizure of the items listed in Attachment B-1.

   b. the **Target Vehicle**, as fully described in Attachment A-2, for the items listed in Attachment B-2, which constitute evidence, fruits, and instrumentalities of drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and the seizure of the items listed in Attachment B-2.

_____
Paul Geare
Task Force Officer
Homeland Security Investigations

Subscribed and sworn before me this 26th day of February, 2020.

_____
Honorable Deborah L. Boardman
United States Magistrate Judge

6

20-628-DLB

### Attachment A-1: The Target Location

The property to be searched is 338 N. Charles Street, Second Floor, Baltimore, Maryland 21202 (hereinafter referred to as the "**Target Location**"), current address for Querida Moran. The **Target Location** is described as follows: an apartment with a white door near hanging pictures and a mirror. The **Target Location** is the second floor of building with "338" in white letters on green awning in front of the building.

Photographs of the **Target Location** and the building in which the **Target Location** is located are as follows:





## Attachment A-2: The Target Vehicle

The property to be searched is described as follows: a 2020 silver Cadillac SUV, bearing Virginia tag UPG7714, registered to Hertz Vehicles LLC, 44074 Mercure Circle, Sterling, Virginia 20166-2014 used and rented by Querida Moran ("**Target Vehicle**").

Photographs of the **Target Vehicle** are as follows:



3



**Attachment B-1: Items to be Seized From the Target Location**

This warrant authorizes the search and seizure of all records and evidence relating to the violations of 21 U.S.C. §§ 841 and 846, by Querida Moran and her known and unknown co-conspirators, including, but not limited, the following:

1. Records of narcotics transactions, including, but not limited to, books; ledgers; receipts; notes; pay and owe sheets; and other papers relating to the manufacture, transportation, possession, and distribution of controlled substances or the receipt and disposition of proceeds derived from the sale of illegal narcotics.

2. Financial records and other documents reflecting narcotics-trafficking activity or the disposition of narcotics proceeds, including, but not limited to, financial instruments; stocks; bonds; bank checks; cashier's checks and receipts for such checks; Western Union receipts; money orders; money order receipts; credit card records; pre-paid credit cards; green dot cards; vehicle registrations; real estate records; income tax returns and any documentation relating to the payment of any income tax; mail and contract mail carrier records; documentation and receipts relating to any safe deposit boxes; keys to safe deposit boxes; documentation and receipts relating to any storage facilities; keys to those storage facilities; devices capable of counting large sums of currency; and any other documents or evidence of financial transactions involving the receipt and disposition of the proceeds of illegal narcotics sales.

3. Records that identify other co-conspirators, including, but not limited to: address books; telephone books; rolodexes; telephone bills and records; records of telephone calls recorded in writing; notes reflecting telephone and pager numbers or papers which reflect names, addresses, and telephone numbers of suspected co-conspirators; photographs, including still photos, negatives, movies, slides, video tapes, and undeveloped film; and audiotape recordings of conversations, including those made over telephone answering machines.

4. Records of travel including, but not limited to, tickets; transportation schedules; passports; automobile rental records; motel/hotel receipts; and any notes and other receipts related to travel.

5. Indicia of occupancy, residency, rental, control, and/or ownership of the premises, including, but not limited to, keys; photographs; deeds; mortgages; lease agreements; rental receipts; canceled checks; bills; titles; and registration documents.

6. Drug paraphernalia, including, but not limited to, digital scales; plastic bags; gel caps; vials; cutting agents (i.e. Mannitol and Quinine); metal pressing devices for compressing controlled substances; razors; kilogram wrappers; and other items used in the preparation and packaging of controlled substances.

7. United States currency or currency equivalents.

8. Suitcases; file cabinets; or other locked or unlocked containers; hidden compartments that may contain any of the items listed in Nos. 1 – 7; and the contents thereof.

9. Locked or unlocked safes (and law enforcement officers may drill the same).

10. Cellular telephones and related records; pagers and personal digital assistants and the numbers stored inside those devices; and devices capable of recording incoming telephone numbers and the numbers stored within those devices.

## Attachment B-2: Items to be Seized From The Target Vehicle

This warrant authorizes the search and seizure of all records and items relating to violations of 21 U.S.C. §§ 841 (a)(1) and 846, by Querida Moran a/k/a Querida Lewis and her known and unknown co-conspirators, including, but not limited to, the following:

1. Controlled substances, including, but not limited to, cocaine.

2. Drug paraphernalia, including, but not limited to, scales, plastic bags, drug wrappers, chemical test kits, metal pressing devices used for compressing cocaine and other controlled substances.

3. All materials used in the packaging of controlled substances in the United States mail, including boxes, padding, and other packaging materials.

3. Documents, books, and papers, reflecting names, addresses and/or telephone numbers of co-conspirators, customers, and suppliers, including, but not limited to, address books, telephone books, telephone bills and records.

4. Photographs, in particular, photographs of co-conspirators, controlled substances, sums of money, vehicles, jewelry, and/or assets.

5. Books, records, receipts, notes, ledgers, diaries, journals, designated codes and other papers relating to the purchase, importation, transportation, manufacture, sale, and distribution of controlled substances.

6. United States currency, bank statements and records, other financial statements, money drafts, letters of credit, money orders and cashier checks, passbooks, bank checks, credit card statements, employment or payment records, loan applications and records, real estate records, real estate rental agreements, property deeds, vehicle titles, money wires and transfers, stocks, bonds, precious metals, jewelry, and any other items evidencing the obtaining, secreting, transfer, and concealment of assets and expenditure of money.

7. Indicia of occupancy and ownership of **the Target Vehicle**, including but not limited to, correspondence and photographs.

8. Identification documents.

9. Safe deposit box keys, safe deposit box documents, storage unit documents, safe

combinations, storage unit keys, records and agreements for payment, and other documents and items evidencing the obtaining, secreting, holding, transfer, and/or concealment of controlled substances.

10. Documents or other records relating to court proceedings involving other co-conspirators, including, but not limited to, charging documents and bail records.

11. Records of travel including, but not limited to, tickets, boarding passes, transportation schedules, passports, visas, notes, motel and hotel receipts, and other receipts related to travel.

12. Cellular telephones and related records; pagers and personal digital assistants and the numbers stored inside those devices; and devices capable of recording incoming telephone numbers and the numbers stored within those devices.

13. Locked or closed containers, boxes, receptacles that contain any of the items listed in Nos. 1 – 12 of this attachment.

14. Locked or unlocked safes, boxes, suitcases, cabinets, or other secure storage containers (and law enforcement officers may drill the same).

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (*e.g.*, hard disks or other media that can store data); any handmade form (*e.g.*, writing); any mechanical form (*e.g.*, printing or typing); and any photographic form (*e.g.*, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).